762 So.2d 476 (2000)
James Roger HUFF, Appellant,
v.
STATE of Florida, Appellee.
No. SC91913.
Supreme Court of Florida.
May 25, 2000.
Rehearing Denied July 25, 2000.
*477 Frederick W. Vollrath, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
James Roger Huff, a prisoner under sentence of death, appeals the trial court's order denying his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm the trial court's denial of postconviction relief.
Huff was convicted of two counts of murder in the first degree and sentenced to death. In Huff v. State, 437 So.2d 1087 (Fla.1983), this Court reversed the convictions and remanded for a new trial due to prosecutorial misconduct. On retrial, Huff was again convicted and sentenced to death. In Huff v. State, 495 So.2d 145 (Fla.1986), this Court affirmed the convictions and sentences. In 1988, Huff filed his first rule 3.850 motion, which was subsequently stricken by the trial court. In Huff v. State, 569 So.2d 1247 (Fla.1990), this Court held that the circuit court should have considered Huffs rule 3.850 motion. On remand, the circuit court considered Huffs motion but denied relief without a hearing. In doing so, the circuit court entered a proposed order submitted by the State without affording Huff the opportunity to raise objections or submit an alternative order. Thus, in Huff v. State, 622 So.2d 982 (Fla.1993), this Court again remanded and ordered the circuit court to hold a hearing for the purpose of determining whether an evidentiary hearing was required and to hear legal argument relating to the rule 3.850 motion. Such hearings have subsequently become known as Huff hearings. The proceedings that followed our 1993 remand are the subject of the instant appeal.
On November 8, 1996, Huff filed an amended rule 3.850 motion. On December 23, 1996, the circuit court held a Huff hearing in order to determine whether any of the claims raised in the motion required an evidentiary hearing. Of the forty-two claims raised by Huff, the circuit court ruled that only one subclaim required an evidentiary hearing.[1] The remaining *478 claims were found to be procedurally barred, legally insufficient, or refuted by the record.[2] Shortly after the Huff hearing, *479 the Office of the Capital Collateral Representative (CCR) moved to withdraw due to a conflict of interest. The circuit court granted CCR's motion to withdraw and, in February of 1997, appointed attorney William K. Eble, Sr., to represent Huff at the evidentiary hearing. On August 8, 1997, the circuit court held the evidentiary hearing. In October 1997, the circuit court entered its order denying relief. Huff now appeals the circuit court's denial of his motion for postconviction relief.
Huff raises three issues in this appeal. Huff claims that: (1) the trial court erred in finding that Huff's counsel did not render ineffective assistance in connection with an alleged plea offer; (2) the trial court erred in finding that Huff was not entitled to an evidentiary hearing on the other issues raised in his rule 3.850 motion; and (3) the trial court erred by refusing to allow Huff's newly appointed counsel to file an amended rule 3.850 motion.
In his first claim, Huff contends that the trial court erred in finding that Huff's counsel did not render ineffective assistance in connection with an alleged plea offer. The focus of the evidentiary hearing below was whether the State conveyed a plea offer to Huff or his attorneys prior to the 1984 retrial. Because this evidentiary hearing took place some thirteen years after the retrial, many of the witnesses had trouble remembering the events preceding the 1984 trial. Prosecutor James Martin Brown testified that he did not offer Huff a plea to second-degree murder. Defense attorney Mark J. Hill testified that to the best of his recollection, he did not receive an offer from the State. However, assistant state attorney Jeffery Mark Pfister testified that he remembered that there was an offer made by the State. Finally, defense attorney Horace Danforth Robuck, Jr., testified that if Huff had told him that he wanted to propose a plea offer to the State, then he would have communicated such an offer to the State.
During the evidentiary hearing, Huff introduced two documents relating to potential plea offers. The first document, dated March 19, 1984, was signed by Huff and stated that Huff "rejects the plea offer communicated to me by my attorneys" for two counts of second-degree murder with a probable sentence of eight years. The second document was neither dated nor signed and stated that Huff agreed to plea to two counts of second-degree murder and to serve consecutive life sentences.
*480 Huff's ineffective assistance of counsel claim is twofold: (1) he alleges that his attorneys failed to tell him about a plea offer from the State and that his attorneys failed to discuss whether it was advisable to accept this offer, and (2) he asserts that his attorneys failed to convey to the State a plea offer made by him. Huff's theory is that an offer was made by the State in March of 1984, as evidenced by the March 19, 1984, document, but that he rejected this offer based on his attorneys' representations that (a) there would be a crime scene expert to establish that the crime scene was tainted, and (b) one of the State's key witnesses, Sheriff Johnson, would be impeached. Huff claims that these representations by counsel were false and therefore counsel was ineffective. Huff also claims that as the trial got closer, it became apparent to him that there would be no crime scene expert, and therefore he changed his mind and wanted to enter a plea, even if it meant life sentences. Huff claims that the second document supports this claim. Huff alleges that his attorneys were ineffective for failing to convey this offer to the State. When defense attorney Hill was asked about the March 19, 1984, document, he stated that he prepared the document to "cover his tail," even though the State had not extended an offer.
In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate that counsel's performance was deficient and that there is a reasonable probability that but for the deficiency, the outcome would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Stephens v. State, 748 So.2d 1028 (Fla.1999), this Court established the standard of review for ineffective assistance of counsel claims:
Ineffectiveness is not a question of "basic, primary, or historical fact." Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

[Strickland, 466 U.S.] at 698[, 104 S.Ct. 2052] (citations omitted) (emphasis supplied). Thus, under Strickland, both the performance and prejudice prongs are mixed question of law and fact, with deference to be given only to the lower court's factual findings.
Id. at 1033. Whether or not an offer was ever made by the State is a question of fact. In its order denying relief, the circuit court concluded that the evidence did not establish that there was a plea offer extended from the State to counsel for the defense. Our review of the record reveals competent, substantial evidence to supports this factual finding. See id. at 1031. ("The State takes the position, and we agree, that the `competent substantial evidence' standard announced in Grossman[ v. State, 708 So.2d 249 (Fla.1997),] applies to the trial court's factual findings."). Thus, we find no merit to Huff's first claim that his attorneys were ineffective for failing to tell him about a plea offer from the State. As to his second claim (whether counsel conveyed Huff's offer to the State), the circuit court further concluded that the evidence did not support Huff's allegation that counsel for the defense failed to extend a plea offer from Huff to the State, or that the State would have been interested in such an agreement. Again, we find that competent, substantial evidence supports this factual finding. Therefore, we conclude that there is also no merit to Huff's assertion that his attorneys were ineffective for failing to convey his alleged plea offer to the State.
In his second claim, Huff asserts that the trial court erred in finding that Huff was not entitled to an evidentiary hearing on the other issues raised in his *481 rule 3.850 motion. A defendant is entitled to an evidentiary hearing unless the motion and the files and records in the case conclusively show that he is entitled to no relief. See Lemon v. State, 498 So.2d 923, 923 (Fla.1986).
The circuit court in this case conducted a lengthy hearing at which both sides were permitted to present argument regarding the forty-two claims raised in Huff's motion. The circuit court in this case granted an evidentiary hearing for one subclaim. Of the claims that were summarily denied, the court found that each of them was either procedurally barred, legally insufficient, or refuted by the record. The court thoroughly addressed each claim and explained the reasons for the denial in its order. For the claims that were found to be procedurally barred, the court concluded that the claims either could have been raised on direct appeal or were raised on direct appeal and found to be without merit. We agree with the circuit court's conclusion that an evidentiary hearing was not warranted for these claims.
Huff further claims that the circuit court erred in failing to attach the relevant portions of the files and records. He cites to Roberts v. State, 678 So.2d 1232, 1236 (Fla.1996), wherein this Court remanded and stated:
Here, the order denies Roberts' motion for postconviction relief after "having considered the Motion [to Vacate Judgment and Sentence], the State's Answer thereto, the files and records in this cause, and arguments of counsel, and being otherwise fully advised in the premises." There are no records or files attached, no citation to the portions of the record that the judge relied upon in denying relief, nor any explanation for the basis of the court's ruling. Thus, we can only speculate as to the court's basis for denying the motion.
However, unlike Roberts, the circuit court in the present case did provide both citations to the record and explanations for the court's rulings. Any error by the court in failing to attach portions of the files or records to its order is harmless if the court refers to the specific portions of the files or records in the order. See Goode v. State, 403 So.2d 931, 933 (Fla. 1981). Therefore, we find no merit to Huff's second claim.
Finally, Huff alleges that the trial court erred by refusing Huff's newly appointed counsel (Eble) to file an amended rule 3.850 motion. The standard of review for a trial court's determination regarding a motion to amend a rule 3.850 motion is whether there was an abuse of discretion. See McConn v. State, 708 So.2d 308, 310 (Fla. 2d DCA 1998).
As stated in the above factual history, Huff has been afforded numerous opportunities to amend his rule 3.850 motion since the original motion was filed in 1988. After this Court's most recent remand in 1993, Huff was again given an opportunity to file an amended rule 3.850 motion. Pursuant to this Court's instructions, the circuit court held a Huff hearing in order to determine whether the issues raised in Huff's motion warranted an evidentiary hearing. After the circuit court concluded that most of Huff's claims were either legally insufficient, procedurally barred, or refuted by the record, Huff again attempted to amend his motion. This time, however, Huff's attempt to amend the motion was denied by the circuit court. Huff claims the circuit court abused its discretion in making this ruling.
We recognize that after the Huff hearing, counsel for CCR was permitted to withdraw from the case and attorney William Eble was appointed to represent Huff at the evidentiary hearing. Eble argues that he should be able to correct those claims in the motion that the circuit court concluded were legally insufficient. However, upon reviewing the motion to amend, it appears that the motion actually raises new issues of ineffective assistance of counsel that were not raised in the previous motion.
*482 Under the circumstances of the present case, we conclude that the circuit court did not abuse its discretion in denying Huff's motion to amend. Huff's sentence was affirmed on appeal in 1986 and Huff has been given ample opportunities in the subsequent years to prepare and amend his rule 3.850 motion.
Accordingly, we affirm the trial court's order denying Huff's rule 3.850 motion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] In claim number (5), Huff pointed out numerous instances where trial counsel was allegedly ineffective at the guilt phase of the trial. The circuit court granted an evidentiary hearing on Huff's subclaim that his trial attorneys rendered ineffective assistance of counsel in (1) failing to tell Huff about a plea bargain from the State and (2) failing to discuss whether it was advisable to accept the offer. The remainder of this claim was summarily denied by the circuit court.
[2] The following claims were summarily denied by the circuit court: (1) that access to the files and records pertaining to Huff's case in the possession of certain state agencies was improperly denied; (2) Huff's emotional state precluded him from giving a knowing and intelligent waiver of his Miranda rights; (3) Huff was not fully advised of his Miranda rights; (4) the introduction of inculpatory statements allegedly made by Huff was a violation of his constitutional rights; (6) counsel provided ineffective assistance by failing to move for a continuance of the penalty phase in order to more fully explain the consequences of waiving the penalty phase and for failing to request a competency hearing; (7) Huff was denied his right to confront a witness through cross-examination; (8) Huff's conviction is invalid since the State's comments on Huff's silence violated his right against self-incrimination; (9) it was a violation of Huff's Eighth Amendment right not to have all mitigating circumstances construed in his favor; (10) the prosecutor's systematic exclusion of non-Witherspoon-excludables by use of peremptory challenges violated Huff's constitutional rights; (11) Huff was denied adversarial testing at his capital trial due to (a) the State's suppression of exculpatory and impeachment evidence, the State's presentation of false and misleading evidence, and to the extent that the prosecution was aware of this information, a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) occurred, and (b) defense counsel's failure to investigate and present evidence in challenging the State's case; (12) Huff is innocent of first-degree murder and he is innocent of the death sentence; (13) the rules prohibiting Huff's collateral counsel from interviewing jurors to determine the extent of the juror misconduct in this case violates Huff's constitutional rights; (14) Florida's statute setting forth aggravating circumstances to be considered in a capital case is facially vague and overbroad; (15) Florida's capital sentencing statute is unconstitutional on its face and as applied for failing to prevent the arbitrary and capricious imposition of the death penalty and for violating the constitutional guarantee prohibiting cruel and unusual punishment; (16) Huff's trial court proceedings were fraught with procedural and substantive errors which cannot be harmless when viewed as a whole; (17) Huff was denied a fair trial by an impartial jury and judge because the court and counsel for the State engaged in misconduct that interfered with the jury's ability to be impartial; (18) newly discovered evidence establishes that Huff's capital conviction and sentence are constitutionally unreliable; (19) Huff's jury was misled by comments and instructions that unconstitutionally diluted the jury's sense of responsibility; (20) Huff's constitutional rights were violated because no reliable transcript of his capital trial exists and reliable appellate review was and is impossible; (21) Huff's constitutional rights were denied by the prosecutor's improper comments; (22) Huff is entitled to a new trial because the judge absented himself during the proceedings in violation of Huff's constitutional rights; (23) the court denied the public the right to access a post-sentencing phase proceeding and compromised Huff's right to a fair trial; (24) due to the State's improper use of its peremptory challenges, Huff was tried by a petit jury which was not a fair cross-section of the community, resulting in the unconstitutional exclusion of a significant portion of the nonwhite population from the jury pool; (25) the cold, calculated, and premeditated aggravating factor is unconstitutionally vague and the court considered the wrong instruction on this aggravating factor; (26) Huff's convictions, based solely on his alleged out-of-court statements which were uncorroborated by any evidence, violated Huff's constitutional rights; (27) the State failed to prove each element of the offenses charged against Huff in violation of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); (2@8) Huff's absence from critical stages of the proceedings prejudiced his guilt phase and penalty phase and trial counsel was ineffective for failing to ensure Huff's presence; (29) Huff was denied a fair trial when the court permitted individuals lacking the proper qualifications to give testimony which was the province of experts; (30) Huff's trial and sentencing, conducted by a state attorney lacking constitutionally conferred jurisdiction to prosecute, rendered Huff's convictions and sentences unconstitutional and constituted an impermissible bill of attainder; (31) due to an improper jury prequalification procedure, Huff was tried by a petit jury which was not a fair cross-section of the community, resulting in the unconstitutional systematic exclusion of a significant portion of the nonwhite population from the jury pool; (32) no rational factfinder could find that the elements of the heinous, atrocious, and cruel aggravating factor were proven beyond a reasonable doubt; (33) the court's reliance on nonstatutory aggravating factors rendered Huff's conviction and sentence unfair; (34) Huff's sentence is unconstitutional because of the improper application of the pecuniary gain aggravating factor; (35) Huff's sentence is unconstitutional because Huff was incompetent to waive his right to a penalty phase; (36) Huff's sentence is unconstitutional because counsel's performance was prejudicially ineffective in failing to investigate for the penalty phase; (37) due process was violated when the Sumter County Sheriff misplaced or destroyed physical evidence directly related to the charges against Huff; (38) the sentencing court erred by failing to impose a written sentence of death and in relying on facts not in evidence in sentencing Huff; (39) the intense security measures undertaken during Huff's trial in the presence of the jury abrogated the presumption of innocence, diluted the State's burden to prove guilt beyond a reasonable doubt, and injected misleading factors into the trial; (40) in sentencing Huff, the trial court relied on material misinformation and counsel was ineffective in failing to correct the court's misunderstanding of its sentencing options; (41) pursuant to an investigative subpoena requesting long-distance phone bills for the telephones of the attorney who represented Huff at his first trial, the State (a) improperly interfered with Huff's right to counsel, resulting in a violation of Huff's attorney-client privilege, and (b) failed to disclose material exculpatory evidence; and (42) Huff is being denied effective representation due to the lack of funding available to postconviction counsel.